IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROBERT B.[1],

           Plaintiff,

v.

Commissioner of Social Security
Administration,

           Defendant.

Case No. 6:17-cv-01823-AC

OPINION AND ORDER

MARK A. MANNING
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street
Eugene, OR 97401

KARL E. OSTERHOUT
Osterhout Berger Disability Law, LLC
521 Cedar way, Suite 200
Oakmont, PA 15139
    Of Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION AND ORDER

RENATA GOWIE
Assistant United States Attorney
District of Oregon
1000 SW Third Ave., Suite 600
Portland, OR 97204-1011

CATHERINE ESCOBAR
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
    Of Attorneys for Defendant

*Opinion and Order*

ACOSTA, Magistrate Judge:

Robert B. ("Plaintiff") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is AFFIRMED.

*Procedural Background*

Plaintiff filed for DIB on December 14, 2012, alleging disability as of December 12, 2012, due to depression; anxiety; diabetes; high blood pressure; bone spurs; "lower neck injury;" "back injury;" bilateral shoulder arthritis; and bilateral shoulder bursitis. Tr. 184. His application was denied initially and upon reconsideration. Tr. 16. A hearing was held on October 11, 2016, before an Administrative Law Judge ("ALJ"); Plaintiff was represented by an attorney, and testified, as did a vocational expert ("VE"). Tr. 35-74. On December 6, 2016, ALJ MaryKay Rauenzahn issued a decision finding Plaintiff not disabled. Tr. 16-27. Plaintiff requested timely review of the ALJ's decision and, after the Appeals Council denied his request for review, filed a complaint in this Court. Tr. 1-3.

*Factual Background*

Born in 1962, Plaintiff was 50 years old on his alleged disability onset date. Tr. 25. He completed high school, and previously worked as a tow truck driver. Tr. 185-86.

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1502. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f); 404.920(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must demonstrate that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

*The ALJ's Findings*

At step one of the sequential evaluation process outlined above, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, December 12, 2012. Tr. 19.

At step two, the ALJ determined Plaintiff had the following severe impairments: obesity; mild degenerative joint disease of the bilateral shoulders; partial left rotator cuff tear and adhesive capsulitis; diabetes mellitus; hypertension; panic disorder; headaches; insomnia; major depressive disorder; mild degenerative joint disease of the bilateral hips; and post-traumatic stress disorder ("PTSD"). Tr. 19. The ALJ found Plaintiff's chronic kidney disease; Vitamin D

4- OPINION AND ORDER

deficiency; epistaxis; autonomic dysfunction causing orthostasis and near syncope; and dyslexia to be non-severe impairments. Tr. 20.

At step three, the ALJ found that Plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 20-22. Because Plaintiff did not establish disability at step three, the ALJ continued to evaluate how Plaintiff's impairments affected his ability to work during the relevant period. The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform modified light work as defined by 20 C.F.R. §§ 404.1567(b) except:

> He can perform tasks involving approximately 2 hours of standing/walking, and approximately 6 hours of sitting in an 8-hour workday (with normal breaks). He can occasionally push/pull up to 20 pounds occasionally, and up to 10 pounds frequently with the bilateral upper extremities. He must avoid overhead reaching with the bilateral upper extremities. He can occasionally climb stairs or ramps, but he must avoid climbing ladders, ropes, and scaffolds. He can occasionally stoop, but he must avoid crawling activities. He can understand, remember, and carry out simple instructions that can be learned within 30 days. He can tolerate no more than occasional interaction with the public and co-workers. He must, therefore, not work directly with the public or in group tasks. He can tolerate no more than occasional supervisor contact in a low stress work environment involving occasional, if any, changes in work duties or work setting. He must avoid conveyor belt paced work and exposure to workplace hazards, such as moving mechanical parts and unprotected heights. Such tasks must involve no more than occasional reading. He must avoid computer use.

Tr. 22.

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a tow truck driver. Tr. 25.

At step five, based on the testimony of the VE and other evidence, the ALJ determined Plaintiff could perform other work existing in significant numbers in the national and local economy despite his impairments, including small products assembler II, electronics worker, and marker II. Tr. 26. Accordingly, the ALJ concluded Plaintiff was not disabled under the Act. *Id.*

*Discussion*

Plaintiff argues the Commissioner failed to adequately address: (1) the medical opinion of Dr. Scott Alvord, Psy.D.; (2) his subjective symptom testimony; and (3) rebuttal evidence submitted to the ALJ after the administrative hearing.

I.  Dr. Alvord's Medical Opinion

The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians are owed deference and will often be entitled to the greatest, if not controlling, weight. *Orn*, 495 F.3d at 633 (citation and internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). Accordingly, the ALJ's reasons for rejecting the treating and examining physicians must be specific and legitimate, and supported by substantial evidence. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

On August 24, 2016, Dr. Alvord performed Plaintiff's psychological evaluation. Tr. 968. Dr. Alvord noted that Plaintiff exhibited intact thought processes, normal speech, intact memory, adequate insight and judgment, and adequate abstract thinking. Tr. 970-71. Dr. Alvord diagnosed Plaintiff with PTSD, major depressive disorder (recurrent mild to moderate), and panic disorder NOS. Tr. 972. Dr. Alvord opined that Plaintiff would have mild difficulty

6- OPINION AND ORDER

understanding and remembering simple instructions, carrying out simple instructions, and the ability to make judgments on simple work-related decisions, and further opined that Plaintiff would have moderate difficulty understanding and remembering complex instructions, carrying out complex instructions, and making judgments on complex work-related decisions. Tr. 973. Dr. Alvord also noted that Plaintiff would have moderate difficulty interacting with the public, supervisors, and co-workers, and would have marked difficulty responding appropriately to usual work situations and to changes in a routine work setting. Tr. 974.

The ALJ accepted Dr. Alvord's opinions regarding Plaintiff's moderate difficulties with social interactions and mild to moderate difficulties with understanding, remembering, and carrying out instructions, as well as making judgments about simple and complex tasks, as evidenced by the ALJ's assessed RFC restricting Plaintiff to simple unskilled tasks with no more than occasional social interaction in a low-stress work environment "involving no more than occasional changes in setting or routine and no conveyor belt paced work." Tr. 25. The ALJ rejected Dr. Alvord's finding that Plaintiff would have marked difficulty responding appropriately to usual work situations and to changes in a routine work setting. Tr. 25. Despite the ALJ's supposed "rejection" of Dr. Alvord's finding, it is clear from context that the ALJ also believed Plaintiff suffered from a degree of limitation in responding to work situations and changes in routine settings, as the assessed RFC limits Plaintiff to only "occasional, if any, changes in work duties or work settings," as well as a low stress environment with minimal interaction with others. Tr. 22. Thus, the ALJ did not entirely reject Dr. Alvord's opinion, but instead disagreed with the level of limitation opined by Dr. Alvord. The ALJ's findings at Step Three of the sequential process support such a conclusion: the ALJ found that Plaintiff had moderate difficulties with social functioning and concentration, persistence, and pace. Tr. 21.

7- OPINION AND ORDER

The ALJ rejected Dr. Alvord's opinion that Plaintiff would experience marked difficulty responding to usual work situations or changes in routine because it was inconsistent with the doctor's own findings during the psychological evaluation. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Dr. Alvord found that Plaintiff exhibited low-average intellectual ability, and maintained the concentration and persistence to spell "WORLD" correctly forward and backwards, calculate basic math equations, and recall words after five minutes during testing. Tr. 971. Furthermore, Dr. Alvord noted that Plaintiff's thought content was normal and he was capable of completing "simple chores," managing his finances, and independently scheduling and attending his own appointments. Tr. 971. Thus, Dr. Alvord's examinations do not reveal why he determined that Plaintiff would experience marked difficulty in normal workplace situations, and actually show that Plaintiff functioned within normal limits during the exam, despite stress and uncertainty. Therefore, the ALJ did not err in finding that Plaintiff experienced only moderate difficulty responding to usual workplace situations and changes in routine, rather than marked difficulty.

Plaintiff argues that the ALJ substituted her lay opinion for that of Dr. Alvord by stating that the doctor's own findings contradict his opinion. Plaintiff reasons that "Dr. Alvord was obviously aware of his *own findings* when he issued his opinion." Pl's Br. 20 (emphasis original). Plaintiff's position, however, is squarely at odds with both the role of the ALJ and settled case law in this circuit: the ALJ is responsible for resolving ambiguities in the medical evidence. *See Garrison*, 759 F.3d at 1009. Furthermore, the Ninth Circuit has held that inconsistencies between a doctor's own treatment notes and their opinion is a clear and convincing reason to reject that opinion. *See Bayliss*, 427 F.3d at 1216. To the extent that Dr. Alvord's opinion was ambiguous because his findings lacked any indication that Plaintiff would

have trouble maintaining a normal routine, the ALJ was empowered to, and did, resolve the ambiguity.

Plaintiff further presents an alternative version of the medical evidence, detailing his history of anxiety and depression throughout the record, in support of Dr. Alvord's partially rejected finding. However, the records that Dr. Alvord reviewed did not evince any particular difficulties with changes in routine, and instead focused on Plaintiff's financial difficulties and lack of work. Tr. 353. Additionally, although the records that Plaintiff cites reflect depression and anxiety, they do not demonstrate evidence of marked difficulty with normal work situations or changes in routine. Indeed, the ALJ noted that Plaintiff stated that he was good at following written and spoken instructions, generally finished what he started, and didn't need reminders to go places. While Plaintiff also stated that he did not handle stress or changes in routine well, the ALJ at credited the testimony, at least in part, by finding that he was moderately impaired in the areas of concentration, persistence, and pace, and formulated an RFC consistent with moderate impairment.

Plaintiff also argues the ALJ rejected findings in addition to Dr. Alvord's opinion that Plaintiff would have marked difficulty responding to changes in the work environment. Dr. Alvord completed a "Medical Source Statement of Ability to do Work-Related Activities," in which the doctor opined about the restrictions outlined above, as well as a "Functional Assessment/Medical Source Statement," outlining Plaintiff's potential difficulties in the workplace. Tr. 972. Dr. Alvord opined that Plaintiff would not have difficulty performing simple and repetitive tasks, but would have difficulty performing detailed and complex tasks, accepting instructions from supervisors, interacting with co-workers and the public, performing work activities on a consistent basis without special or additional instructions, maintaining regular attendance, completing a normal workday or work week without interruption, and

9- OPINION AND ORDER

dealing with the usual stress in the workplace. Tr. 972. Plaintiff argues that the ALJ failed to explicitly reject these findings. However, Plaintiff's argument is inapposite. Dr. Alvord merely stated that Plaintiff would have "difficulty" with some aspects of the workplace; he did not state that Plaintiff was precluded from performing those activities. He then translated that "difficulty" into specifics in a separate section of his opinion, where he stated the degree of difficulty Plaintiff would likely experience (none, mild, moderate, marked, or extreme) in the workplace. Tr. 973-74. The ALJ focused on the more detailed section of Dr. Alvord's opinion, which directly corresponded to the section in which Dr. Alvord stated that Plaintiff would have "difficulty" with the workplace. Accordingly, the ALJ implicitly rejected the less detailed findings in her discussion of Dr. Alvord's "Medical Source Statement of Ability to do Work-Related Activities," detailed above.

Finally, Plaintiff also argued that the ALJ failed to give proper deference to Dr. Alvord's level of expertise, given that Dr. Alvord was a consultative specialist. *See* 20 C.F.R. § 404.1527(c)(5) (a specialist physician's opinion generally should be granted more weight in the area of their specialty than a non-specialist physician). Plaintiff's argument is inapposite, as the ALJ accorded great weight to the majority of the doctor's opinion and formulated an RFC consistent with the doctor's opined restrictions. The ALJ only disagreed with the doctor regarding the degree of impairment Plaintiff experienced in responding to normal workplace situations and changes in routine. As such, Plaintiff has not demonstrated how the ALJ failed to take into account the doctor's credentials when considering his opinion.

II. Plaintiff's Subjective Symptom Testimony

The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035-36

10- OPINION AND ORDER

(9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . [or] other testimony that appears less than candid. . . ." *Id.* at 1284. However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nevertheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson*, 359 F.3d at 1197.

On March 29, 2013, Plaintiff completed an Adult Function Report detailing limitations on his ability to work. Tr. 210-17. Plaintiff alleged that his conditions affected his ability to reach, lift, drive, crawl, and use tools. Tr. 210. Regarding activities of personal care, Plaintiff stated that he required help dressing and bathing, and did not prepare his own meals or perform yard work. Tr. 212. Additionally, Plaintiff alleged that his conditions affected his ability to lift, squat, reach, sit, kneel, remember, complete tasks, concentrate, understand, and use his hands, and further stated that he could walk five to six blocks before requiring rest. Tr. 215. Plaintiff indicated that he generally finished what he started, followed written and spoken instructions well, and got along with authority figures, but did not handle stress or changes in routine well. Tr. 215-16.

11- OPINION AND ORDER

The ALJ rejected Plaintiff's subjective symptom testimony, but Plaintiff argues the ALJ erred by failing to consider his "exemplary" work history. However, Plaintiff has not cited any controlling authority stating that an ALJ is required to discuss a claimant's work history in the opinion, only that the ALJ is required to consider it. *See* 20 C.F.R. § 404.1529(c)(3). Here, it is plain that the ALJ considered Plaintiff's work record prior to his alleged disability onset date, as the ALJ questioned Plaintiff at length about his job at the administrative hearing. Plaintiff's argument, that consideration and discussion are equivalent in the regulations, is belied by the regulations themselves, which state that "[i]n determining whether you are disabled... [w]e will consider all of your statements about your symptoms." If the terms "discuss" and "consider" were equivalent, an ALJ would be required to address every instance a claimant discussed their symptoms throughout the entire record, which would lead to opinions of unmanageable length. Therefore, the ALJ did not err by omitting a discussion of Plaintiff's work history in evaluating his subjective symptom testimony, and the ALJ's finding remains supported by clear and convincing evidence.

III.  Rebuttal Evidence Submitted to the ALJ

At step five of the sequential process, the Commissioner bears the burden of proof establishing the claimant can perform work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c). To satisfy her burden of proof, the Commissioner typically calls upon a VE to testify as to the number of jobs in the national economy that the claimant could perform, given their RFC. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

The VE testified at Plaintiff's administrative hearing and stated that he was capable of performing the jobs of small products assembler II, electronics worker, and marker II, based on a hypothetical limiting Plaintiff to no more than occasional interaction with co-workers and supervisors, which was later incorporated in the RFC. After the administrative hearing but

12- OPINION AND ORDER

before the ALJ rendered her opinion, Plaintiff submitted various objections to the VE's testimony, including a letter from Paula Santagati, a "senior vocational rehabilitation counselor." Tr. 241-84. Ms. Santagati opined that *any* claimant limited to occasional contact with supervisors and co-workers would be precluded from working at any job in the United States because "the training and probationary period for any job would require more than occasional interaction with co-workers and supervisors." Tr. 282. Ms. Santagati gave several examples of entry-level jobs requiring a training period that, in her opinion, would preclude employment if a claimant were limited to occasional interactions with co-workers and supervisors, including cashiering for CVS or Shaw's Supermarket, dishwashing, Merry Maids, and jobs at Benchmark Senior Living Communities. Tr. 282-83.

Plaintiff argues that the ALJ committed harmful error by failing to address Ms. Santagati's "rebuttal evidence" in her decision. However, Plaintiff's argument is inapposite, as the ALJ *did* address Ms. Santagati's opinion, albeit in an indirect way. Plaintiffs submitted a "Post-Hearing Memorandum of Law & Objections," in conjunction with Ms. Santagati's opinion. Tr. 241-84. The beginning of Plaintiff's memorandum contains a list of objections refined into discrete arguments built on raw evidence in the latter portion of the memorandum, including Ms. Santagati's opinion. Plaintiff objected to the jobs given by the VE, asserting the VE's opinion was unreliable and unsupported by substantial evidence based on "current labor market research and reliable sources of job information" indicating that the "positions would require more than occasional interaction with coworkers and supervisors," and Plaintiff cited the opinion of Ms. Santagati as a "reliable source[] of job information." Tr. 247. Accordingly, Ms. Santagati's opinion is subsumed into the larger objection, which advanced the theory that Plaintiff's social limitations would preclude employment. The ALJ rejected the objection, stating that the testifying VE based his conclusions on "training and professional experience,"

13- OPINION AND ORDER

including "extensive expertise in the area of vocational rehabilitation." Tr. 246. Thus, the ALJ implicitly rejected Ms. Santagati's opinion, as the objection was based in part on the evidence she provided. Plaintiff's argument is quite narrow, and entirely premised upon the idea that the ALJ completely omitted any discussion of Ms. Santagati's rebuttal evidence. However, because the ALJ gave legally sufficient reasons to rebut the objection and that objection was linked to the rebuttal evidence, the ALJ did not err. While Plaintiff argues that the Hearings, Appeals, and Litigation Manual ("HALLEX") § I-2-5-55 and *Parker v. Colvin*[2] compel a remand for additional proceedings based on unrefuted post-hearing evidence, because the ALJ addressed Ms. Santagati's statement in her opinion, the HALLEX provision is inapposite.

Furthermore, even assuming the ALJ's rejection of Ms. Santagti's opinion was too attenuated to satisfy the legal standard, the Court would remain unpersuaded by Plaintiff's argument. Ms. Santagati's letter is dated October 1, 2015, while the administrative hearing took place on October 11, 2016; she could not have considered Plaintiff's case when she gave her opinion. This is further evidenced by the complete lack of details relevant to Plaintiff in Ms. Santagati's opinion, including any reference to the VE's testimony or Plaintiff's particular impairments. To have any evidentiary value, VE testimony must be based upon a complete hypothetical incorporating the entirety of a claimant's impairments. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). It is clear Ms. Santagati had no grasp of the totality of Plaintiff's impairments and, therefore, could not give an opinion based on a complete hypothetical or

---

[2] Plaintiff's reliance on *Parker* is misplaced. 2015 LEXIS 21390, at *3 (9th Cir. 2015). Plaintiff states that *Parker* stands for the proposition that "if a claimant raises an objection about the VE's opinion, the ALJ must rule on the objection and discuss any ruling in the decision (quoting HALLEX § I-2-5-55)." This citation would, seemingly, provide binding authority for Plaintiff's argument, as the Ninth Circuit would have empowered the HALLEX provision with precedential value. However, the quoted language originates from a stipulated Order of Remand between the parties signed by a court mediator, rather than a panel of judges. As such, *Parker* provides no more persuasive authority than the HALLEX itself.

14- OPINION AND ORDER

understanding of the case. Accordingly, the Court finds that Ms. Santagati's opinion is not probative "rebuttal evidence," given that it fails the legal standard for VE testimony such that no "reasonable mind" could accept its conclusion. *See Farias v. Colvin*, 519 Fed. Appx. 439, 440 (9th Cir. 2013) (evidence must be relevant and of such quality that a "reasonable mind might accept [it] as adequate" to support a legally sufficient conclusion).

The court's finding that Ms. Santagati's opinion is not probative is supported by the finding of other courts. Plaintiff's attorney has submitted Ms. Santagati's boilerplate opinion to many federal courts around the country, the majority of which have found that it does not represent evidence worthy of reversal. *See, e.g., Kidd v. Berryhill*, 5:17-CV-420-REW, 2018 WL 3040894, at *4-5 (E.D. Ky. 2018) (rejecting Ms. Santagati's opinion because it states "utterly nothing" about the claimant's "life, health, ability to work, or case"); *Lara v. Berryhill*, Civil Action No. B-17-77, 2017 WL 7790109, at *8-9 (S.D. Texas 2017) (rejecting Ms. Santagati's opinion); *Curtis B. v. Comm'r of Soc. Sec. Admin.*, Case No. C17-1893 BAT, 2018 WL 4735624, at *4-5 (W.D. Wash. 2018) (rejecting Ms. Santagati's opinion because it is "entirely divorced from any fact in this case and does not demonstrate the VE testimony was incorrect"); *Koehler v. Berryhill*, Case No. 17-cv-03487-RMI, 2018 WL 3861725, *3-4 (N.D. California 2018) (Ms. Santagati's opinion provided no basis for remand). Therefore, Plaintiff has not established a basis for remand and the Court declines to overturn the ALJ's decision.

*Conclusion*

Based on the foregoing, the Commissioner's decision denying Plaintiff's application for DIB is AFFIRMED.

DATED this ____ day of November, 2018.

John V. Acosta
United States Magistrate Judge

15- OPINION AND ORDER